Thank you, Your Honor. Good morning. May it please the Court, we are here today for the Court to decide what the term fixed fee means in federal government contracting with respect to cost reimbursable fixed fee level of effort contracts. The dispute arises out of a series of contracts being performed at the U.S. Army Aviation and Missile Command in Huntsville, Alabama. These contracts all were for a varying degree of technical services to support the missile range at Redstone Arsenal which is involved in missile testing for the Army and other services. The heart of our case, in my view, deals with what the meaning of fixed fee is. FAR 16306 defines a fixed fee as a fee that cannot vary with cost and is fixed at inception. The dispute arises over the meaning of the fixed fee with respect to certain options that are in the contract. We assert that options... That's correct. Well, if you take a look at the base contract, if the government awards the base contract and shortly after the base period of the contract has been awarded and only a third of the hours have been expended, the contractor is still entitled to the fixed fee. What I would point out to the Court is that the government is in charge of deciding what type of contract to award, the terms of those contracts, and the manner in which work is placed on those contracts. The option quantity, the fixed fee for the option quantity is set at the inception of the contract. It is a fixed number regardless of the number of hours that... But that doesn't explain a lot why the parties would have contracted to pay the entire fixed fee for one hour of work. Your Honor, the purpose of a cost reimbursable fixed fee contract is to fix the profit that a contractor will get on a particular segment of work on the contract. If the contractor had no options, there would be no dispute even if the government had only used one hour of work. The contractor is entitled to the entirety of the fixed fee which the parties agreed to at the inception of the contract. That's for the base period. It's for the entire period of the contract. The language in the contract which attempts to vary that is the provision which is in our We used one particular contract as an example rather than the entire range of contracts. The administrative record would have been larger than I could carry if that had been otherwise. Let me ask you this. The base period concludes, then you move into the first of the... I guess there's three option periods. Right. The government may award an option. Right. Now, it's conceivable that there would be no work under an option period. Right. And in that event, the government is not required to exercise the option. And you're not... and you wouldn't get a fee. That's correct. So you're saying, though, that to pick up on what Judge Wright was saying in this discussion with you, that if they order just one... if they order nothing, they don't pay a fee. That's correct. But if they order just one hour, they pay the whole $170,000. That's correct. The government... I mean, that'll... to, again, continue what you were saying, I understand your input. It just... when one looks at that, it seems counterintuitive. That seems... it seems difficult to me to conceive of why anybody would enter into that kind of contractual arrangement. If they did not have the necessary work to support the option, they were in charge of not exercising the option. Right. The problem is here that my client, the contractor, Ampet Corporation, is not in charge of the number of hours that is placed on that particular contract. The fixed fee is essentially... one element of the fixed fee is to pay for the standby costs that my client incurs. The United States, in order to support the work at Redstone Arsenal, has elected not to use full-time civil servants with the full range of expertise that is required to perform this contract, rather to use a support contractor. So we are required to have all of those people either on staff or as consultants, and that's a cost to us, which comes out of the profit. But if the government... if the government doesn't order anything, you don't get a cent. If the government elects not to exercise an option, we can reduce our staff. We aren't then obligated... They say they exercise the option. They say, all right, we're in the option, period. But then they don't order anything. I don't believe an option can be exercised without some order. The operative phrase is they have to exercise the option. If they exercise the option without a limitation, it's the entire member... I'm looking at it after the base period ended. Did the option period... when the base contract ended, you were automatically in what I would call, I guess, the option period, correct? Unless... if no option was exercised, we were no longer obligated to perform. Right, but how long did this... Well, you have here option one, a total of 154,800 man-hours, right? Correct. Now, that came into existence when? At the inception of the contract. At the inception of the contract, right. There is a base period and there were several option periods in each of these contracts. So the base period has ended. Correct. And we're now in the first option period. If an option had been exercised for some amount. Well, if... I mean, the government... But how long does this... how long does the period last during which the government can... There's a provision in the contract, and I'm not sure exactly what this is, that the option must be ordered within a certain period of time. Otherwise, it just simply expires and we're no longer able to... So the government has the base period ends. Correct. And then we enter the option period. And the government has from, I'll just pick an arbitrary date, March the 1st of 2000 to February the 28th of 2001, okay? Sure. And it has... it can, during that period, order up to 154,800 hours. Correct. And if it doesn't order anything during that period, the contractor doesn't get anything, even though the contractor has to be on standby. Right. We take a debt risk that they will or will not... But if it orders just one hour on July the 10th and nothing else, you get $170,000 in addition to the labor cost of that hour, right? It depends. It doesn't depend. Suppose the government only orders one hour, but they wanted a rocket scientist to do this. And the only rocket scientist that was available, Charlie, is $150,000 an hour. So we hire the rocket scientist that the United States essentially wants, the qualifications. He does the work. Now, is our fixed fee $1.10 for that $150,000 worth of work? Well, under the government's reading of the contract, it is. Right. That's their reading. We think... What were the different hourly rates? I mean, we have here this $14.03. Now, that wasn't... there were different hourly rates charged, correct? Yes, there were, and that's attached to Kelly Joyner's declaration. What's the highest hourly rate? The highest hourly rate is somewhere in the $65 or $70 range. So the $170,000 an hour example has no relationship to this contract? Well, it's an absurd example, but it makes a point. Well, how can it make a point? The highest rate here is $65 an hour. Let's suppose the government orders five hours of assistance, $65 an hour. I thought your example was the annual salary of the people that you need to keep on staff to perform these analyses. That's a risk on the contractor with respect to having people available to fill the needs of this particular contract. The government chooses the work that it wants performed and the amount of hourly rates, not hourly rates, the amount of people that they want. The contractor then makes the mix of the technical staff that the government wants for their particular jobs. Some are higher than $13 an hour in the contract. Some may be lower than the $13 an hour in the contract. In fact, what Kelly Joyner's declaration points out is that in billing, after the work has been done, the hourly rates vary substantially and we bill the fixed fee in accordance with the terms of the contract proportionally to the fixed fee, which is the way that it's generally done. After the contract is completed, the parties get back together and settle up on the firm, the fixed fee of the contract. The contract provides an hourly rate for the fixed fee and it says that that's to be used for purposes of pricing, right? That's correct. Why doesn't that suggest that the fixed fee is to be priced on an hourly basis? There's a difference between for pricing purposes and for reimbursement and payment purposes. The deposition of Wanda Preston, who was... Well, he talked about deposition. We're dealing here with the plain language of the contract. Where in the contract does it suggest that the pricing rate for the fixed fee is to be adjusted later on when the final billing takes place? Section B-2 of the contract requires the contractor to bill the fixed fee proportionally to the cost for a provisional billing. Where does it suggest that the final billing for the fixed fee, which is not listed as an estimated fixed fee, where does it suggest the final billing for the fixed fee is going to change? Because the parties have entered into an agreement by which the entire fixed fee is paid. That's why it's fixed. But it says fixed fee per hour. Where does it suggest that the hourly rate of the fixed fee is going to change in the final billing? The provision, Your Honor, which says for purposes of pricing has a special meaning in this contract. And Wanda Preston, the supervisory contracting officer, testified as to her understanding of that term at the time this contract was awarded. And it was essentially for the purpose of pricing the work that various Army customers would pay to the United States Army Aviation and Missile Command to support the test that they needed run. It's not in any way related to the pricing of a fixed fee on an hourly rate. In addition, the problem is that's what it says. It says pricing of the estimate per hour for the labor. And it says fixed fee, $1.10 an hour. The fixed fee of $1.10 an hour was never the practice of the parties. There is not one. We look at the practice of the contract as clear. Absolutely the practice of the contract is clear. Even if it's clear, what case says that we can look at the practice of the parties when the contract is clear on its face? Well, I disagree that this is clear on its face. But if it's clear, what case says that we can look at the practice? Well, if you accept this as being clear on its face, then I don't have an argument to make to you except to say that it is not clear on its face. And Ms. Preston's testimony makes clear that it's not clear on its face. This is in here for a specific purpose. If you look at the estimated cost schedule at B3, which is at page 2 of our reply brief, the estimated cost and fee associated with each option shall be stated in the contract modification in which the option is exercised. Pricing of the option quantity shall be as stated in B2 for the purpose of pricing. Mr. Rees, let me ask you this. Let me work this through my own head. April the 1st, say, the government – we're in option 1. The government orders services an hour of someone who costs – and their rate is $20 an hour. Correct. Okay? And I guess you submit invoices monthly? That's right. Either bi-weekly or monthly. Okay. But say it's monthly just to make it easy. Say that's the only order that happens in April. Okay. The government ordered one hour of $20 – of someone who costs $20 an hour. Now, on May the 1st, would the government get a bill in the amount of $20 or get a bill in the amount of $21.10? The government would get a bill in the amount of $20 of cost – direct cost – plus the proportional rate for the total fixed fee. In other words, when you do provisional billing, you bill the actual cost and a proportional rate. So our rate would be approximately 8% of the $20, whatever that comes out. That's how we bill. We never bill $1.10 an hour, except by a coincidence, for the recovery of cost and fee under this contract. I don't understand what you mean by coincidence. Isn't that the way the billing is computed, using the $1.10 an hour? No, sir, it is not. No. And the declaration of Kelly Joyner explains that we bill actual cost for what was incurred under the contract, plus, as required by the contract, a proportional fixed fee for the purpose of a provisional billing rate. There was never any billing. That's $1.10, right? No, sir. Which is it? Well, it depends on the actual cost. If the actual cost was $20 an hour, it's 8%. No, I'm saying that's its rate, rate of cost per hour, $20 an hour. That's right. That's the labor rate plus the fixed fee. But the fixed fee is $1.10 per hour. No, it isn't. That's what it says in the contract. Well, I understand your view of that. I disagree with it. It's not a clear, unequivocal statement. It's for pricing purposes. And when Ms. Preston says pricing purposes is to determine how we charge the government customer, it has nothing to do with how we bill the contract. It has nothing to do with how you bill the contract? For the pricing purposes. Well, what's the $1.10 used for? The $1.10 is used to estimate the amount that they need to charge their customer on a provisional rate for the cost. They use the $13 or $14 an hour plus the provisional fixed fee and bill their client kicks in $15.13. If it's more than that, they go back to their client and get more money. The fixed fee is 8% of the $15.13, and that's where the $1.10 came from. That's correct. So when you bill the government, you didn't bill them for $170,000. You billed them for the actual cost of the hour's work, right? Correct. Plus, then you add an 8% fixed fee to that, right? For a provisional billing rate, that's correct. Well, why didn't you just bill them for the $170,000? At the end of the term, at the end of the contract, that's where the parties in a cost-reimbursable contract settle up. DCA comes out. They do an audit. They determine all of this. So what you're saying is that when you bill them for the actual cost, you never bill them for the $170,000. You only bill them at the actual hourly cost plus 8%? Plus that portion of the fixed fee as required by the clause that deals with cost-reimbursable contracts. So that's the math. That's correct. You bill them for the actual cost plus 8%, right? Right. And then we had a final invoice where we invoiced for the entire fixed fee. Now, we entered into a stipulation in this matter before the litigation started. The stipulation is written out at page 13 and 14 of our brief. There were five or six contracts that occurred prior to this contract. And in every one of those contracts, some there were fewer hours than had been stated in the schedule that were ordered. We got the entire fixed fee in every one of those. And in some of those, there were DCA audits that told the contracting officer, you shouldn't do it this way, and the contracting officer elected to do it in the manner that the parties had done this work. So we think that certainly if there is an ambiguity, then we are certainly entitled to the previous course of dealing and course of action between the parties. All right. Let's hear from the government. And we'll save your rebuttal time. We asked you to do it. Thank you, Your Honor. Mr. McNamara? May it please the Court? The plain language of these contracts is clear in that the fixed fee is calculated on a per-hour basis and not as MTA claims on an aggregate basis. But your contention is that it's not $1.10 an hour, right? If I'm understanding the situation correctly, it's not that you take each hour and add $1.10 to it. It's the government's contention that it's 8% of the hour cost. Am I correct or am I wrong? No, it's confusing, Your Honor. And if we could look, well, the fee is calculated on a per-hour basis. It was not billed. Antec is correct. It was not billed as $1.10 per hour.  Well, let me ask you a question. Suppose they worked 100 hours, and the cost per hour, the actual cost per hour, was $20 an hour instead of the estimated cost of $14 an hour. Now, they worked 100 hours. Do you calculate the fixed fee by multiplying 100 by 1.10, or do you take 8% of the labor cost? You would take it for billing purposes. No, what's owed under the contract. The contract is 100 hours times $1.10. It doesn't say that. It's an estimate. It's the per-hour contract. The contract says estimated. The contract says- But you say pay 8%. You say they pay 8% but they don't owe 8%. They owe less than 8% but they pay 8% anyway. That doesn't make sense either. That's correct, Your Honor. The interim billing mechanism, which is set up by clause B-1 of the contract, provides for a proportional billing. And it is difficult to square that clause with the per-hour clause because if the cost- It's complicated. I'm sorry? It's difficult to square. Because if the actual costs exceed the estimated costs, then you could theoretically end up with a fixed fee. If you calculate it on a proportional basis, you could end up with a fixed fee that exceeds even the total amount that's specified in the contract. But that seems to be the purpose, doesn't it? They estimate 154,800 man-hours of work. Let's say that the ultimate is 200,000 man-hours. So they order more than the estimated. You're right. They can't do that. The option has a ceiling number of man-hours of 154,800. They can't order more than that number of man-hours. The cost, as Amtech points out correctly, the cost of those man-hours can exceed the estimated cost, as it did in contract 856. It exceeded it by approximately 24%. The proportional billing clause, then, theoretically, the numbers don't always add up. Because if the costs exceed the estimated cost, then the proportion of the fee would also exceed the estimated proportion of the fee. It does not make sense. So what's the proportion billing clause here? It's clause B-1. If you look at B-1, this is like on page. It's on page A-10439 in volume 2 of the appendix. Yes? Has there been provided before the Court of Federal Claims calculations of the fixed costs, the standby costs, the costs that were incurred even if less than the maximum in the contract were ordered? Yes. Those costs are in the record. So, for example, it- But the government's position is that's too bad. If you don't order a sufficient number of analysis, if you don't order enough work, those costs are not to be recovered. I think that's correct, Your Honor, yes. You think or you know? Well, I'm a little unclear about exactly what you're asking. But if the government exercises a certain number of hours, then the fixed fee for those hours is set by either that number of hours or by this proportional billing clause. One or the other, but not by the total fee as annotated. I don't understand. I'm trying to understand what the government's position is. There are 100 hours that are ordered at $20 an hour. And at the end of the day, when everything's reconciled, what's the final amount that's due for the 100 hours of work? Is it the fixed fee? Is it $1.10 an hour? Is it 8%? Is it something else? What's your position? Our position is that it would have to be based upon this interim billing clause. The amount of each installment would be in proportion to the total amount of fixed fees. What's the answer? How do I compute it? It's 100 hours, $20 an hour. What's the fixed fee? At the end of the day, when everything's reconciled, not provisional billing or anything like that, what's the amount that's owed? At the end of the day, our position is that it is the per hour term that's here. $1.10. That may vary from, yes, $1.10. That may vary from the provisional clause. But that isn't what was done here. As I gather, less than the maximum was ordered, the fixed fee on what was ordered and paid was 8%. But the problem is that it was significantly less than the estimated total and that the standby costs need to be considered and that, in fact, that's what the government contemplated when the contract was entered into, although it doesn't say that. That's correct. Either way, whether it's... Oh, either way. But, in fact, what was actually reimbursed, I gather, was not at $1.10 per hour but was the actual 8%. It may, if you look at, for example, that may be correct. I'm not... The contracting officers... Sometimes we reimburse them the whole fixed fee. We made mistakes, and on five occasions, the same tech points out, on five occasions, we just gave them the entire fixed fee. On other occasions, we gave them less. And we either did that based upon... The reason it's okay to say either or is that we either did it based upon this 8% number or we did it on the per hour figure, but we never did it. The contract does not call for it ever to be done on the total, that total number, if that makes sense. So maybe we should consider the contract as providing for 8% fixed fee on the hours actually worked, which, as I understand it, is not a position that is articulated by either party. In other words, the contractor was saying we get 100%. You were saying they get $1.10 an hour. Maybe the correct answer is 8%. That may... That may be true. And if that's the case, then the fixed fee would never exceed... It's still... Oh, it has to be capped by the maximum fixed fee. It would have to be capped by the maximum fixed fee. But why isn't the correct answer 8%? What they're giving here in the contract is an example of a fixed fee of $1.10 an hour if the hourly rate is $1,403. But what was contemplated was that if the hourly rate was higher than $1,403, then the fixed fee would be proportionately higher, capped by the $170,000. No, Your Honor. I don't think that... That's not true. The clause B-1 provides for an interim billing mechanism. There's no support in the contract for the idea that the fixed fee should... What that suggests, Your Honor, is that the fixed fee would vary with the costs. That's prohibited, as Amtak repeated the argument. That's prohibited by the FAR. The fee has to be fixed at the inception of the contract. No, no, no, no, no. You argued that it didn't violate the FAR if it varied with the number of hours of work. That's correct. That's our argument. It does not violate the FAR for the fee to increase or decrease based upon the number of hours exercised. But it would violate the FAR if the cost, if the fee varied with the cost. And that's what that scenario suggests, that if the cost is more, then somehow the fee goes up. Mr. McNamara, let me ask you the... We have a year, assuming, just for purposes of my understanding, we have a year where the only thing that's ordered is 10 hours of someone who costs $20 an hour. Okay? If I do the math, that's $200 an hour. What is the fixed fee? The fixed fee pursuant to the contract would be $1.10. Times 10. Times 10. Okay, why isn't that the answer? Where does this 8% come from? That's what you told me, that it was 8%. You told me it was 10. Where does this 8% come from? The 8% comes from CLAW. If we look at CLAW's B1 of 1 of 14... 8%. 1 of 10 is 8% of 14 of 3. That's the... Right. That's... That's where the 8% comes from. Right, that's where it comes from. But if the cost... The problem is that the costs can exceed the estimate. So you can end up with a fee... If you go purely... If you calculate the fee purely on a proportional basis, you can end up with a fee that exceeds the maximum. So that's where... I don't know if I'm answering your question right, but it comes from... That 8% comes from this B1 clause, which is an interim billing clause, that says, That's where they're getting that 8% from. And that's what they use on an interim basis. But it does not make sense to use that as the final number. But that's not the issue in this case. His interior contractor is staffed to provide 154,800 man hours. And let's say, on this example, 10 hours are ordered. Whether this contractor is reimbursed at 8% of $14 or 8% of $20 is not the question. The question is, does he get the reimbursement for the unordered hours because he was required to be staffed to perform that work? That's... That's... That's correct. That's a difficult question, because it is rather counterintuitive, is it not, to enter into a contract exercise option which contemplates 154,800 hours of work? Order very little of it, but expect the contractor to be able to perform in a timely way at any time during, let's say, an annual option period, which requires a certain amount of preparation and staff, whether it's 8% or something else, of a minuscule amount of work seems to be secondary to this fundamental premise that the government witnesses, I think, support the position that they expected this service at any time that it was ordered during the option period. That's correct. But if the government had ordered nothing, if they had not exercised these options, then Amtec would have achieved nothing. That's right, but they did exercise the option. They did. And that's the problem. If they had not exercised the option... But they exercised... For example, contract R398, option 7 of that contract, there were 67,500 total potential hours. The government exercised an option for 596 of those hours for a fixed fee of about $1,300 as opposed to a total fixed fee of $157,000. They exercised a very, very small portion of the total number of hours. Did they announce when they exercised it that we only wanted 2 hours out of this option period? I'm not sure what they announced. But that's the problem, isn't it? The option apparently was exercised for $154,800. How is hevertake? I mean, that's at least a significant undertaking. But the contract contemplates that the government... The plain language of the contract... It may not be... It may not in some sense make sense that the contractor would have to stand by and be ready for the government to exercise or not to exercise these options, but that's what the contract contemplates. Exactly, but it was exercised, so that's not the alternative. The question is, were they required to stand by and be ready for over $100,000 or to stand by and be ready for practically nothing? The contract contemplates that they are required to stand by and be ready for practically nothing. How much of the fixed fee is profit and how much is additional cost when it was originally calculated in the contract? I'm not sure. I'm not sure about that. The record does not reflect that. No, but fixed fee... If you look, for example, at one of the interim vouchers in Volume 1 of the appendix at 10391, you can see that the Amtec recovered for its overhead, for example. It recovered for its labor costs, its travel costs. Does the fixed fee include profit? Yes, the fixed fee certainly includes profit. Well, that's my question, is how much of it is profit and how much of it is overhead costs? Well, I don't think any of it is overhead costs. I don't know for sure, but it certainly includes profit, and I do know that they could recover their overhead costs... Separately? Separately, when they recovered their costs. So, theoretically, then, if Amtec incurs overhead costs for the five... So the stand-by costs that they're complaining about could be billed separately? Could be billed... Could be or would be? Well, they would be. They are, if you look at this one example of an interim voucher that includes overhead. Overhead spread over $150,000 is quite different than overhead spread over 10 hours. Certainly, if only 10 hours were ordered in that year, there's no way that a year's worth of overhead can be placed on that. What could anyone ever contemplate? That's correct, but it's also the case that if the government were to exercise a certain number of hours, Amtec could hire more employees, it could lease more space, it could do all sorts of things. There could be a certain amount of flexibility with the amount of its overall costs. Let me answer this explicitly. Suppose they order 100 hours, and they incur, over that period, $200,000 in overhead for that 100 hours. Is it your... Is it the government's belief that they can bill for the entire $200,000, separately bill for the entire $200,000 in overhead, or do they have to only bill proportionately on a per-hour basis? I'm not sure, Your Honor. I don't know if... The FAR provides that the government can reimburse allowable costs. I don't know how overhead is calculated under the FAR, but they certainly did recover for overhead. We know that much. They certainly can't have recovered their entire overhead if practically no hours were owed. I'm not sure what you're telling us, but it's a curious contract, but it does seem, and the government witnesses have said, that it was contemplated that there would be substantial work ordered, and this is what it would cost. And when it wasn't ordered, what happens if, in fact, fixed costs are incurred, which can have been reimbursed, whether, in fact, the contractor has to bear the burden of a pleasantly drafted contract that the government witnesses say is not really what they had in mind, or not? How does our government deal with the public, with those who provide services to us? The contractor for Amtec bore the risk that the contract explicitly plainly contemplates that not all of the hours would be exercised, and it was plain on the face of the contract. And Amtec bore that risk when it agrees to the base contracts here. I don't know what the problem is. Your argument makes sense that the fixed fee represents profit. They shouldn't get the profit for the whole thing just because they spent one hour of work, but to the extent that the fixed fee represents reimbursement for costs that they would incur regardless of the number of hours of work, the contractor's argument makes sense. And what I'm trying to get at is, would the contractor in that situation recover all its overhead, the standby overhead that it incurred? And you're not able to answer that question. I'm not able to answer it definitively, but I'm sorry, I don't mean to speculate, but certainly they could recover for their costs. And I don't know how far that goes. I just don't. But they did bill for their costs, and they billed separately for their overhead. So at least theoretically, they could recover for their overhead. I'm sorry if that's not entirely satisfactory. I see that I've gone over my time. Yes, we've exhausted your time. Thank you, Mr. McNamara. Thank you. Mr. Riggs? Yes, Your Honor. If the government had chosen to terminate, partially terminate some of these contracts... What's the answer in terms of the billing for the overhead? If you had standby overhead, would that be separately billable under the contract? And if so, why not? We have agreed in this contract to bill a fixed actual cost labor rate for the hours that are worked. And the only billing that we recover any overhead for are those hours. Ten hours of calculating. I'm sorry? How's the overhead calculated on the hours that are worked? The overhead is wrapped into the billing rate. It's called a loaded rate. It has all of the benefits. It has all of the corporate overhead. It has the G&A. The actual payment to an employee may be $13 an hour or $14 an hour, but with all the loaded material on it, it may be $21 or $22 an hour, plus whatever fee you get down at the end. So just looking at the hourly rate, we recover none of the standby costs. How do I know that? Is there someplace in the record that says you don't recover the standby costs? That issue wasn't completely raised at the lower court. Well, that's the problem, because you're arguing that the fixed fee covers the standby overhead cost, but the possibility exists that you were entitled to bill the standby overhead cost separately as cost. How do we know? There is no mechanism in this contract for us to separately bill the overhead that we incurred if the government only used a small portion of the hours except from the fixed fee. And in some instances... How do I know that? What contract language or testimony tells me that what you're saying is correct? The contracts themselves do not provide for a recovery cost other than on a rate for the actual cost of the labor order. In other words, we are entitled to recover the loaded rate for that employee for the number of hours that he works on a direct charge to the contract. Hours that that person sits in the office waiting to be called, we don't recover that overhead on this contract. And you're not asking for that. I realize that would be significantly higher than the $170,000 estimated fixed fee per year, but that does, in a sense, work against your argument, doesn't it? Because that is profit. And the profit has not been, in a sense, earned because the lift wasn't done. Well, we contend that the profit is earned by virtue of the nature of the contract and the way that it's set up. But how does it set up, in fact, that this is the option price, which will be billed as we go along? This is what this option is going to cost you. It's going to cost $170,000 a year, however much of it you use in terms of the cost plus aspect. But it wasn't structured that way. And that is, in fact, what the Court of Federal Claims I think relied on, that it wasn't structured that way. Obviously, we disagree with Judge Williams with respect to that. I still believe that the fixed fee is a fixed fee. Profit covers many things in a federal government contract. There are always, in a federal government contract, unallowable costs that may be incurred that are paid out of profit. There may be, for instance, if there was an overrun in these cases, we wouldn't have gotten an additional fee. How much of the fixed fee was profit? Is there a calculation in the record? There is no calculation in the record, Your Honor, as to what portion of the fixed fee was profit. But from what I know, I can tell you that there were some contracts, because of the number of people that stood by and the length of time they stood by, there was no profit in those contracts. In other contracts, there may have been profit because the people didn't stand by as long or we learned from the government. That's not listed in the record. No, that's in the record. It wasn't in the... That's not. Well, in this instance, this case went out on motion for summary judgment. There was no evidence taken in this case at all at the court of federal claims. So there were many things that didn't end up in the record that might have if there had been a trial. Okay. Any more questions? Thank you, Mr. Wray. Thank you very much, Your Honor. Thank you, Mr. McNair. The case is taken under submission.